MEB W. ANDERSON (10227)
Assistant Utah Attorney General
MARK L. SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendants
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail mebanderson@utah.gov

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DEROYALE ARDEANE JOHNSON, <br><br> Plaintiff, <br> v. <br><br> DR. KENNON TUBBS, *et al.*, <br><br> Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** <br><br><br><br> Case: 2:11-cv-00641 <br><br> Judge Dee Benson |

Defendants Dr. Tubbs, Dr. Garden, and P.A. Jeffries, (collectively hereinafter

"State Defendants" or "Defendants"), by and through counsel Meb W. Anderson,

Assistant Utah Attorney General, hereby submit this Memorandum in Support of their

Motion to Dismiss.

Defendants request that Plaintiff's Complaint be dismissed with prejudice based

on the Plaintiff's failure to state a claim upon which relief can be granted, failure to

comply with the applicable statute of limitations, and/or failure to allege any clearly established constitutional violation that can withstand the immunity provided to the Defendants through the doctrine of qualified immunity.

## UNDISPUTED FACTUAL ALLEGATIONS

For purposes of this Motion to Dismiss only, each of the factual allegations made in Plaintiff's Complaint (and in a few instances supplemented through his factual allegations made in grievances to the Utah Department of Corrections – which were attached to his Complaint, and are attached also to the Declaration of Billie Casper) is deemed accepted as pled.  Those facts relevant to this Motion are recited below:

1.      DeRoyle Johnson ("Johnson") is currently an inmate who resides at the Salt Lake County jail.  (Compl. at ¶ 1.)

2.      Defendant Dr. Garden is the head of the medical review board and is in charge of the medical department at the Utah Department of Corrections ("UDOC"). (Compl. at page 3 ¶ 1.)

3.      Defendant P.A. Jeffries was responsible for triaging Johnson's health care request forms (HCRs) or inmate care requests (ICRs).  (Compl. at page 3 ¶ 2.)

4.      Defendant Dr. Tubbs, had been made aware of Johnson's medical condition of a hernia when Johnson was incarcerated at the Utah State Prison.  (Compl. at page 3 ¶ 3.)

5.      The UDOC Medical Department, medical review board, came to the decision that Johnson's medical condition of a hernia was not severe enough for him to

be seen by a specialist, and Johnson was treated for his hernia related symptoms ó chiefly acid reflux - by giving him Prilosec and cinaminadine (sic).  (Compl. at page 4 ¶ 2.)

6.     On May 2, 2007 Johnson's housing assignment changed at UDOC. Plaintiff's medication Gabapentin was confiscated from his cell and returned to the medical department to be dispersed at pill-line.  Defendant was told at pill-line that he would have to wait for the pharmacy to refill another blister packet.  (Compl. at page 5 ¶ 4.)

7.     Johnson waited approximately six days until the refill blister packet was dispensed by the pharmacy.  (Compl. at page 4 ¶ 5.)

8.     On or about May 8, 2007 Johnson began receiving Gabapentin again. During the month of May and June 2007 Johnson went two days and then five days without receiving Gabapentin due to alleged expiration and renewal problems with the prescription.  (Compl. at page 6 ¶ 6.)

9.     Johnson alleges he submitted HCRs on May 10, 2007, May 23, 2007, and May 31, 2007, and was seen by UDOC medical staff on May 31, 2007.  Johnson does not indicate specifically why he submitted these HCRs.  (Compl. at page 7 ¶ 2.)

10.     On or about June 19, 2007 Johnson submitted an HCR form which stated that his hernia was causing severe pain when he sat down and stood up.  Johnson requested to see a doctor.  Defendant P.A. Jeffries was the medical personnel who triaged the HCR and following standard non-emergency HCR protocol P.A. Jeffries saw Johnson regarding his hernia on June 28, 2007.  (Compl. at page 7 ¶ 3; Exh. A to Casper Dec.)

11.     The ICR actually stated:  "Need to see doc about hernia, a lot of pain, hurts to sit and stand."  (Exh. A to Casper Dec.)

12.     Dr. Tubbs had been treating Johnson for a "hyanal"[1] hernia condition from 2005 until June 28, 2007.  (Compl. at page 8 ¶ 1.)

13.     Treatment for Johnson's hernia condition included medication to combat acid-reflux.  (Compl. at pages 8-9 ¶ 2.)

14.     On June 28, 2007 Johnson was triaged by P.A. Jeffries in his cell and he immediately sent Johnson to the Wasatch Medical Unit.  (Exh. A to Casper Dec.)

15.     On June 28, 2007 Johnson was taken to the Wasatch Medical Unit infirmary to be seen by Dr. Tubbs because the Plaintiff's hernia had turned hard.  (Compl. at page 9 ¶ 2.)

16.     Dr. Tubbs triaged Johnson and determined he needed to be transported to the University of Utah hospital.  (Exh. A to Casper Dec.)

17.     Johnson was then taken to the University of Utah hospital.  (Compl. at page 9 ¶ 2.)

18.     At the University of Utah Johnson underwent a C.T. scan where it was determined that Johnson had a left ventral hernia with an obstruction and Johnson underwent surgery to successfully repair the hernia.  (Compl. at page 9 ¶ 3.)

19.     On June 28, 2007 at the University of Utah hospital Johnson told a doctor he had been diagnosed with a "hyanil" (hiatal) hernia.  On June 28, 2007 an unnamed

---

[1] The grievance responses reference a hiatal hernia.  (Exh. A to Casper Dec.)

University of Utah doctor told Johnson he had a ventral hernia that required surgery. (Exh. A to Casper Dec.)

20.     In response to a level 1 grievance Art Adcock an RN at the UDOC determined that:  "It would appear appropriate and correct diagnoses were made surrounding this issue.  Further review of your medical record suggests no evidence of impartiality or racial discrimination exists."  (Exh. A to Casper Dec.)

21.     In a response to a level 2 grievance Billie Casper, Inmate Grievance Coordinator, and Steven Turley, Warden at the Utah State Prison, indicate that:  "Nothing in your ICR lead the triage nurse to believe you had an emergency requiring immediate treatment.  You did not complain to pill line medical providers or request custody staff initiates an emergency response.  Based on this information a reasonable person would conclude your medical condition was not an emergency until June 28, 2007."  (Exh. A to Casper Dec.)   "Your condition was the only factor used to determine the treatment you needed."  (*Id.*)

22.     In a response to a level 3 grievance Tom Anderson, hearing officer at the UDOC indicates:  "Dr. Tubbs entered a diagnosis of ventral hernia with obstruction in your medical records on June 28th, 2007. . . . I can find no record of you attempting to report that you had an emergency medical condition, prior to your exam on June 28th."  (Exh. A to Casper Dec.)

## LEGAL ARGUMENTS

A motion to dismiss - as the one brought here - requires the court to decide whether the factual allegations made in the Complaint, if true, would entitle the plaintiff to some sort of legal remedy.  To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  In other words, the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party. *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments.  *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  When a civil rights complaint contains only "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a

constitutional . . . claim," the court considers those assertions conclusory and does not afford

them the presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting

*Twombly*, 550 U.S. at 554-55).

**I.    Plaintiff Failed to Comply With the Applicable Statute of Limitations.**

All of Plaintiffs' claims for alleged violations of the Federal Constitution fail because the

claims do not meet the requirements of 42 U.S.C. § 1983.  Section 1983 is the statutory vehicle

for suing state actors for alleged violations of the Constitution or of federal laws.  *Jojola v.*

*Chavez,* 55 F.3d 488, 492 (10th Cir. 1995).  Thus, if the claim fails to meet Section 1983

requirements, a plaintiff has no other redress for alleged Constitutional violations, and Plaintiffs'

Section 1983 claims are time-barred.

It is well settled that civil rights actions brought under Section 1983 must be brought

within four years from the time the claim arose.  S*ee, e.g., Mismash v. Murray City,* 730 F.2d

1366, 1367 (10th Cir. 1984) (concluding that Utah's residual four-year statute of limitations

applies to section 1983 claims); *Adamson v. City of Provo*, 819 F. Supp. 934, 942 (D. Utah

1993) (same); *Maddocks v. Salt Lake City Corp.,* 740 P.2d 1337, 1339 (Utah 1987) (same); *see*

*also* Utah Code Ann. § 78B-2-307(3).

Here, Plaintiffs' claims are time-barred because they were not brought within the four-

year limitation period.[2]  For example, Johnson clearly indicates in his grievances that he was

told of his diagnosis being a ventral hernia (which he alleges indicated an improper diagnosis by

Dr. Tubbs) and his need for emergency surgery at the University of Utah hospital on June 28,

---

[2] To the extent any of Plaintiff's claims could be construed as state constitutional claims, they are
barred by the two-year statute of limitations found in Utah Code Ann. § 78B-2-304(3) (2009).

2007.  (Exh. A to Casper Dec.)  To the extent Johnson has any viable claim, Plaintiff knew of

his alleged constitutional claims on June 28, 2007.  All of Plaintiff's claims arise out of this

instance of hernia surgery at the University of Utah hospital on June 28, 2007.  Thus, the

applicable four-year statute of limitations expired on June 28, 2011 for each of Plaintiff's

claims.

Accordingly, Johnson's constitutional claims are barred by the statute of limitations.  All

of Plaintiffs' claims that are predicated on UDOC conduct that occurred four years or more

before the date Plaintiffs filed this lawsuit are time-barred.[3]  While this statute of limitations

violation is fatal to Plaintiff's claims, Defendants herein provide the Court with further

dispositive arguments in an abundance of caution.

## II.     Johnson's § 1983 Claims Fail Because They Are Not Linked To Any Alleged Constitutional Violations.

Plaintiffs' Section 1983 claims fail to state a viable claim because no facts in the

complaint link these defendants to any alleged constitutional violation.  Under Section 1983, an

"affirmative link" between each defendant's conduct and the alleged constitutional deprivation

must be plead and proven.  *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156

(10th Cir. 2001).   "Personal participation is an essential allegation in a § 1983 claim."   *Bennett*

*v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  A civil rights complaint must contain

sufficient factual specificity to identify the particular conduct of the named defendant which has

injured the plaintiff.  In other words, the plaintiff must establish that each defendant committed

---

[3] Plaintiff signed his Complaint on July 1, 2011.  The Complaint was received by the Court on
July 8, 2011, and the Complaint was filed on July 18, 2011.  All of these dates are outside the
applicable limitations period.

some action that intentionally or deliberately violated the plaintiff's rights. *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Lewis v. Cook County Dep't of Corrections*, 28 F. Supp.2d 1073, 1079 (N.D. Ill. 1998); *Linebarger v. Williams*, 77 F.R.D. 682, 685 (E.D. Okl. 1977).

The only mention of Dr. Garden in Plaintiffs' Complaint is to name him in the caption as a defendant and to identify him respectively as the head of the UDOC medical staff and Medical Review Board. Because Plaintiff is silent as to how Dr. Garden caused the alleged constitutional injuries in this case, Dr. Garden is "entitled to be dismissed from the lawsuit." *Linebarger*, 77 F.R.D. at 684 (quoting *Hopkins v. Hall*, 372 F. Supp. 182, 183 (E.D. Okl. 1974)). The Tenth Circuit has expressly held that where a plaintiff fails to allege a defendant "personally participated" in any of the decisions regarding his hernia related medical care plaintiff has failed to state a claim against such a defendant. *See Horton v. Ward*, 123 Fed.Appx. 368, 2005 WL 419814 (10th Cir.).

Further, with regard to Dr. Tubbs, Plaintiff only makes an allegation that he improperly treated him for a hiatal hernia rather than for the ventral hernia that ultimately required surgery. As will be discussed below, it is well settled in the Tenth Circuit that a disagreement with a course of treatment does not amount to a constitutional violation.[4] Here, there is no evidence

---

[4] The Tenth Circuit has dismissed cases dealing with quarrels between doctors and inmates regarding the appropriate handling of his medical condition on summary judgment

that Dr. Tubbs had any contact with inmate Johnson other than to properly diagnose him with a ventral hernia on June 28, 2007 and send him to the University of Utah where he could undergo further treatment as necessary.

Finally, with regard to Defendant P.A. Jeffries, the only contact he had with inmate Johnson relevant to his constitutional claims is receiving an HCR that stated: "Need to see doc about hernia, a lot of pain, hurts to sit and stand." (Exh. A to Casper Dec.)  As the UDOC has already determined:  "Nothing in your ICR lead the triage nurse to believe you had an emergency requiring immediate treatment." (Exh. A to Casper Dec.)  Simply, Defendant Jeffries only knew that Johnson's condition required further treatment when he saw him on June 28, 2007 at which time he sent Johnson on to the Wasatch Medical Unit for further care.  Neither Johnson's HCR nor his care of Johnson on June 28, 2007 creates an affirmative link between P.A. Jeffries and Johnson's alleged constitutional violations.

Nor can Plaintiffs assert that any defendants are liable as supervisors.  It is well settled in the Tenth Circuit that "[u]nder § 1983, government officials are not vicariously liable for the misconduct of their subordinates." *Serna v. Colorado Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  Supervisors are liable only "for their own culpable involvement in the violation of a person's constitutional rights." *Id.*  In other words, a plaintiff may not rely on a defendant's job title to establish liability.

---

specifically because "a difference over medical treatment does not state an Eighth Amendment claim of deliberate indifference." *Bartlett v. Correctional Medical Services, Inc.*, 124 F.3d 216, 1997 WL 672834 (10th Cir.) (unpublished).

### III.     The State Officials Acting In Their Individual Capacity Are Entitled To Qualified Immunity.

Plaintiff cannot meet his burden of showing Defendants are not entitled to qualified immunity from his 42 U.S.C. § 1983 claims.  Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818) (1982)).  When a state official asserts qualified immunity, she creates a rebuttable presumption that she is immune from the plaintiff's § 1983 claims.  *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001).

The United States Supreme Court has held that:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.
> Because qualified immunity is immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial. Indeed, we have made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

*Pearson v. Callahan*, 129 S.Ct. 808. 815 (2009) (marks and citations omitted).

The Tenth Circuit has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155

11

(10th Cir. 2001).  The Supreme Court has further held that "[q]ualified immunity shields an

officer from suit when she makes a decision that, even if constitutionally deficient, reasonably

misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543

U.S. 194, 125 S.Ct. 596, 599 (2004).  Qualified immunity may be denied "only if, on an

objective basis, it is obvious that no reasonably competent officer would have concluded that the

actions were constitutional." *Gomes*, 451 F.3d at 1134.  (emphasis added).  But "if officers of

reasonable competence could disagree" about the lawfulness of the challenged conduct, then

"[qualified] immunity should be recognized." *Gomes*, 451 F.3d at 1136 (alteration in original)

(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

      Once a defendant raises qualified immunity, the plaintiff bears the heavy burden of

proving (1) that the facts alleged make out a violation of a constitutional right, and/or (2) that a

reasonable municipal official would have known they were violating such a constitutional right.

*Pearson v. Callahan*, 129 S.Ct. 808, 816 (2009).  "If the plaintiff fails to satisfy either part of the

two-part inquiry, the court must grant the defendant qualified immunity." *Holland v.

Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

      When applicable, the Tenth Circuit has also applied a third prong to the qualified

immunity analysis, that is an official is entitled to qualified immunity if "in spite of the fact that

the law was clearly established, extraordinary circumstances" including reliance on counsel, on a

statute, or policy "so prevented the official from knowing that her actions were unconstitutional

that she should not be imputed with knowledge of a clearly established right." *Gomes*, 451 F.3d

at 1135 (internal quotation marks omitted).  If the plaintiff fails to satisfy any element of his

heavy three-part burden, the court must grant the defendant qualified immunity.  *See Medina*, 252 F.3d at 1128.

           **a.**        **No Constitutional Violation Occurred.**

The Complaint generically claims violations based on Deliberate Indifference in violation of the Eighth Amendment.  However, case law and the factual allegations of the Complaint evidence that the individual State Defendants did not violate Plaintiffs' constitutional and civil rights.

Plaintiff cannot prevail on his deliberate indifference claims.  In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Greg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909 (1976)). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

**The Objective Component:  No Objective Evidence Of Serious Condition**

The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999).

As Mr. Johnson is fully aware (as the case cited below involved inmate Johnson) the temporary denial of pain medication is not a sufficiently serious condition to even warrant any further Eighth Amendment analysis.  *See Johnson v. Richins*, 2011 WL 3677839 (10th Cir.)

(holding that there was no evidence that temporary denial of Johnson pain medication was deliberate indifference).  Here, there is also no evidence that the generic allegations of a temporary denial of Johnson's pain medication was deliberate indifference, and further such a claim is not even a serious medical issue worthy of a deliberate indifference analysis.

A hernia has been defined as "the protrusion of an organ or tissue through a weak area in the muscles or tissue that surround and contain it." *Webb v. Hamidullah*, 281 Fed.Appx. 159, 2008 WL 2337608 at page 2 (4th Cir.)  "A ventral hernia occurs on the front wall of the abdomen, generally resulting from the breakdown of muscles near an old incision." *Id.* (citation omitted).  In *Webb*, the Seventh Circuit held there was no deliberate indifference where an inmate was recommended for ventral hernia surgery on July 30, 2004 and had still not received the surgery on May 8, 2006.  *Id.* at pages 4-7.  "[A] delay with respect to hernia surgery does not necessarily constitute deliberate indifference, absent some resultant harm or worsened condition. . . . an eight month delay in providing elective hernia surgery [i]s insufficient to constitute an Eighth Amendment violation, [where] the prisoner did not present any information to his physician during the intervening period to indicate that his situation was an emergency mandating immediate treatment." *Id.* at page 7.

"Standard medical treatment for a reducible hernia would be pain relief, as well as monitoring, and just generally, you know, precautions, safety precautions as far as lifting goes." *Winslow v. Prison Health Services*, 2011 WL 167280 (3rd Cir.) (quoting physician's assistant). "[W]ith proper treatment, a hernia could heal without surgical intervention." *Id.* (quoting physician and determining there was no deliberate indifference in hernia treatment because a

14

disagreement with a medical decision that the medical provider subjectively perceives to be reasonable does not give rise to a constitutional claim).

Similarly, here it is undisputed that Johnson ultimately did suffer from a serious medical condition when his hernia became incarcerated and required surgery, but the treatment and any surgical delay prior to June 28, 2007 did not amount to deliberate indifference and prior to June 28, 2007 Johnson's condition was not sufficiently serious. June 28, 2008 was the first day the UDOC medical staff had any objective evidence of a serious medical condition, and Johnson underwent successful hernia surgery on that same day. Prior to June 27, 2008 the record evidence does not support the requirement of sufficiently serious suffering from a hernia to meet the objective showing required for deliberate indifference, and once these Defendants knew of any sufficiently serious medical condition, Johnson was immediately treated. Under these facts, Plaintiff cannot provide any objective evidence of a sufficiently serious medical condition to survive a qualified immunity analysis, but in any event, there absolutely was no culpable state of mind as is required for a finding of deliberate indifference, as is discussed below.

### The Subjective Component: No Evidence of Culpable Mental State

The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent failure to provide adequate medical care," *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir.1996), are insufficient to state a claim under the Eighth Amendment. "Delay in [providing] medical care only constitutes an Eighth

15

Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. The Tenth Circuit has held that the "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir.2001).  "To satisfy the subjective component, the defendant must possess a sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish." *Hix v. Tennessee Department of Corrections,* 196 Fed.Appx. 350, 2006 WL 2431103 at page 355 (6th Cir.) (unpublished) (quotes and citation omitted).

"It is well-settled that a mere difference of opinion regarding the proper treatment for a medical condition is not sufficient to show deliberate indifference, and medical personnel are entitled to substantial deference in choosing a proper course of treatment. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980)." *Todd v. Bigelow*, 2012 WL 627965 (D. Utah 2012).  Here, despite attempts to characterize otherwise, Plaintiff is claiming only a difference of opinion with the course of hernia treatment undertaken by the UDOC medical staff.  The allegations, and Plaintiff's own grievances, indicate that the instant anyone on the UDOC medical staff felt that Johnson had a significant medical issue; they referred him on for further care.  The fact is that after the hernia surgery at the University of Utah, Johnson's hernia condition was resolved.

For example, in *Bellazerius v. Booker*, 99 F.3d 1149 (Table); 1996 WL 623240 (10th Cir.) the Tenth Circuit addressed a claim of deliberate indifference to an inmate's serious hernia condition.  Mr. Bellazerius ultimately received surgery for his hernia, and "once he saw the surgeon he was told ─this surgery should have been done.─" *Id*.  Prison medical staff then waited an additional two months to operate.  *Id*.  The Tenth Circuit recognized that Bellazerius'

16

"primary complaint is that he did not get surgery for his medical condition as quickly as he believes he should have." *Id*.  But, as here, where prison officials had seen and evaluated the inmate at regular intervals, prison officials did not ignore the inmate's condition, and the inmate was doing fine post-surgery "a difference of opinion between Mr. Bellazerius and the prison medical staff about his medical condition, and a wait of two months for surgery once it was considered necessary, do not constitute deliberate indifference." *Id*.; *see Boyett v. County of Washington,* 282 Fed.Appx. 667, 2008 WL 2483286 (10th Cir.) (even if hernia diagnosis was both negligent and harmful it would not rise to the level of a constitutional violation because there is no evidence of the requisite culpable state of mind); *Herl v. Gamble*, 124 Fed.Appx. 630, 2005 WL 648234 (10th Cir.) (dismissal for failure to state a claim was proper where complaint of hernia was merely a difference of opinion between inmate and defendants as to the adequacy of the treatment he received); *Jackson v. McCollum*, 118 Fed.Appx. 389, 2004 WL 2786640 (10th Cir.) (where hernia was surgically repaired there was no claim for deliberate indifference); *Levy v. Kafka*, 6 Fed.Appx. 822, 2001 WL 363312 (10th Cir.) (no deliberate indifference claim where allegations where that double hernia was not properly treated with surgery).[5]

---

[5] Other Circuits have also similarly held that a determination that an inmate does not need hernia surgery, even if negligent, does not rise to the level of a constitutional violation.  *See Dickerson v. SCI Graterford*, 2011 WL 6000745 at page 2 (3rd Cir.); *Brown v. Beard*, 2011 WL 4362240 at page 2-3 (3rd Cir.) (no deliberate indifference where hospital doctor had recommended hernia surgery yet prison medical staff denied the surgery); *Chadwick v. Walker*, 2010 WL 545492 (7th Cir.) (motion to dismiss granted and held there was no deliberate indifference where hernia surgery was denied until six weeks after filing of complaint); *Williams v. Sebek*, 2008 WL 4909008 (3rd Cir.) (no deliberate indifference where hernia surgery was successful despite one month delay after hernia led to serious pain); *Clark v. Adams*, 2007 WL 1814269 (5th Cir.) (no deliberate indifference despite claim of ineffective treatment for bilateral hernias where prison doctor was unaware of any substantial risk of harm and allegations amounted to only negligence in failure to refer for surgery).

17

Clearly, Johnson did not experience any delay in hernia treatment that resulted in "substantial harm."  In *Horton v. Ward*, 2005 WL 419814 at page 3 (10th Cir.) the Tenth Circuit held that:  "[I]t is not enough for a prisoner to establish that a prison doctor failed to diagnose or treat a serious medical condition properly, and this is true even if the doctor acted negligently."  The *Horton* Court held that where an umbilical hernia was diagnosed in December 1999, and was still not repaired as of August 2002 due in part to a scheduling error by the prison nursing staff (plaintiff finally had the surgery in 2004), there was no deliberate indifference to the inmate's medical needs.  *Id*. at page 4.

Case law with similar facts from other Circuit Courts also strongly evidences that the UDOC medical staff did not violate Johnson's Eighth Amendment rights.  For example, in *Heard v. Sheahan*, 2005 WL 2030660 (7th Cir.) the Seventh Circuit addressed a situation where a prison physician determined an inmate needed hernia surgery but would not schedule the surgery for six months.  Another jail physician told Heard he would not receive surgery for nine months.  *Id*. at page 1.  Once in the custody of IDOC, a prison physician again recommended surgery, but that recommendation was overruled by IDOC's medical director.  *Id*.  "Heard, however, presents no evidence that the particular defendants he named in his original complaint knew that they delays they were contemplating in scheduling surgery created a substantial risk of medical harm."  *Id*. at page 2.  Here, there is also no evidence that any Defendant knew of any substantial risk of medical harm to Johnson until June 28, 2007 – the day he received hernia surgery.  "[T]he question of whether or when a particular treatment is warranted is a 'classic example of a matter for medical judgment.'"  *Id*. (citation omitted).

18

Further, in *Price v. Carey*, 1992 WL 34208 (4th Cir.) the Fourth Circuit addressed a situation where a hernia was deemed a non-emergency on June 29, 1988, but was "difficult to reduce and required surgery -soon." *Id.* at page 1.  Nearly two months later inmate Price was sent to the emergency room because his hernia could not be reduced.  *Id.*  An emergency room physician did reduce the hernia and recommended surgery "as soon as possible." *Id.*  Nearly ten months later, on April 14, 1989, Price finally had surgery on his incarcerated hernia and was released in stable condition.  *Id.*  These facts are very similar to the case at hand, with Price in fact exhibiting many more symptoms of hernia problems than Johnson alleges.  The Fourth Circuit Court held that Price had failed to present the medical staff with any indication that his situation was an emergency mandating immediate treatment.  *Id.* at page 3.  The Court noted that mere negligence or malpractice is not a constitutional violation.  *Id.*  "Dr. Carey's treatment of Price was not so grossly incompetent, inadequate, or excessive as to rise to the level of a constitutional violation under Section 1983." *Id.*

Here, prison officials treated Johnson's hernia and symptoms with antacid medication and pain medication.  *See Stedman v. Dunn*, 98 Fed.Appx. 769, 2004 WL 1053221 (10th Cir.) (diagnosis of hiatal hernia and prescription of heartburn medication fully resolved plaintiff's discomfort).  Defendant Dr. Tubbs saw and evaluated Johnson when he complained of hernia symptoms from 2005 until June 28, 2007 when his hernia was fixed through surgery.  Further, once it was determined that Johnson's hernia was incarcerated; he was immediately sent first to the Wasatch Medical Unit by P.A. Jeffries, and then to the University of Utah hospital by Dr. Tubbs for further evaluation and successful hernia surgery, all on the same day, June 28, 2007.

19

In *Arocho v. Lappin*, 2012 WL 401516 at page 1 (10th Cir.), the Tenth Circuit dealt with a case where Arocho claimed he was unconstitutionally denied medical treatment.  In October 2007, the prison doctor submitted a recommendation that Arocho be approved for the requested therapy.  *Id*.  When he still didn't receive the therapy *Arocho* filed suit and sought injunctive relief.  *Id*.  The Tenth Circuit held that: "As our cases reflect, when medical judgment is involved –the subjective component is not satisfied, absent an <u>extraordinary degree of neglect</u>." *Id*. at page 5 (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)) (emphasis added). Here, the facts clearly indicate there is not an extraordinary degree of neglect.

Even if the evidence supported Plaintiff's claims of significant pain from the day he submitted his HCR until the day he was triaged by P.A. Jeffries, the record shows the CUCF medical staff did not have a culpable state of mind in treating Johnson's hernia sufficient to meet the subjective requirement of the deliberate indifference standard.  In fact, the evidence shows the UDOC medical staff was solicitous of Plaintiff's complaints and took extensive care to ensure that he was immediately taken care of once they determined there might be any significant medical issue.

For example, Plaintiff was given acid-reflux medication to help with his hernia pain and symptoms, had his hernia treated by Dr. Tubbs, and was given pain medication.  Plaintiff did not complain of any medical emergency to the pill-line medical providers nor did he request custody staff to initiate any emergency response.  Further, Plaintiff's hernia issue has now been resolved.  Plaintiff cannot, on this evidence, meet the requirement of showing medical personnel acted with a culpable state of mind.

In short, Plaintiff cannot meet his burden under the Eighth Amendment of showing a constitutional violation.  He cannot meet either the objective or subjective showing required to establish that medical personnel were deliberately indifferent to his medical needs.  It is clear that plaintiff cannot survive qualified immunity because the facts do not support his claim that his Eight Amendment rights were violated.

### b.      The Law Was Not Clearly Established.

Plaintiff cannot meet his second burden of showing that the law was clearly established so that medical personnel would have understood that their actions violated his Constitutional rights.  Under the second part of the qualified immunity defense, a plaintiff cannot prevail unless he can show that the defendant's conduct violated a "clearly established" constitutional right, such that "a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right." *Gomes*, 451 F.3d at 1134.  Plaintiff cannot meet this burden because as clearly shown above the law is settled that a medical provider who determines an inmate with an otherwise non-emergent hernia situation, which only later becomes emergent, and the emergency is then properly addressed, does not violate the Eighth Amendment.  Even if the law were not already established as such, in light of the cases cited herein, no reasonable medical official would understand that the treatment inmate Johnson received for his hernia condition was in any way a constitutional violation.

A reasonable prison medical provider would understand that the course of treatment undertaken with regard to inmate Johnson is constitutional.  Each of the medical providers involved in Plaintiff's care acted objectively reasonably under the circumstances.  Plaintiff's claims therefore fail as a matter of law.

## CONCLUSION

Based on the foregoing, Defendants respectfully ask this Court to dismiss Plaintiff's lawsuit in its entirety, with prejudice.

DATED this 12th day of June, 2012.

MARK L. SHURTLEFF
UTAH ATTORNEY GENERAL


_/s/ Meb W. Anderson_
MEB W. ANDERSON
Assistant Utah Attorney General
Attorney for State Defendants


## CERTIFICATE OF MAILING

I certify that on June 12, 2012, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**, using the Court's CM/ECF system and I also certify that a true and correct copy of the foregoing was sent by United States mail, postage prepaid, to the following:

DeRoyale A. Johnson
164895
UTAH STATE PRISON
PO BOX 250
DRAPER, UT 84020-0250
PRO SE


/s/ Yvonne Schenk